ROBERT K. DOW, Appellant, *v.* IOWA CENTRAL RAILWAY COMPANY, EDWARD H. PERKINS, JR., and Others, Respondents.

*Specific performance — agreement for exchange of railroad stocks on reorganization — failure to pay assessments — right to privileges lost.*

A party seeking to enforce specific performance of a contract must prove that he has complied with the conditions therein provided to be performed by him.

On the sale of a railroad in mortgage foreclosure proceedings, which cut off the interests of stockholders, the property was purchased by a reorganization committee, under an agreement made by the bondholders, which empowered the committee to give to the holders of stock in the original company the privilege of exchanging the same for stock in the reorganized company, on the payment of certain assessments, and provided that if any holder of stock should decline or fail to pay his assessments, the privilege of receiving new stock should be ratably distributed among the holders of debt certificates and of stock, who should have paid their assessments, and in case such persons did not accept the privilege, the same should be allotted by the committee in their discretion to other persons who might make the required payments.

The committee provided for the payment of the assessment in installments. One of the stockholders having paid the first installment, his stock certificate was thereupon indorsed with a receipt therefor and with an assent to the bondholders' agreement. This stockholder thereafter died without having made any additional payment, and the committee sent a notice to the representatives of his estate, calling for the final payment of the assessments upon the decedent's stock, which stated that, unless payment was made by a day named, the holder of the stock would forfeit all right to participation in the reorganization.

No further payment was made, and some time after the date named in the notice, the plaintiff purchased the decedent's stock and received his stock certificate, made a tender of the overdue assessments, and demanded of the committee an apportionment of the new stock, which was refused on the ground that the time had passed for receiving assessments; whereupon he brought an action to compel the committee to deliver new stock to him.

*Held,* that the action being one for specific performance, the mere fact of the existence of the default in the payment of assessments precluded a recovery;

That it required no proceedings on the part of the reorganization committee to terminate the rights of a defaulter under the agreement for the exchange of stock;

That the conditions of the agreement executed themselves, and the moment a holder of the old stock made default, the rights of others intervened, which could be enforced and which the committee could not ignore.

It appeared that as late as and even after the date when the plaintiff tendered the assessment upon the stock which he represented, the reorganization committee received payments of assessments from other persons; but it also appeared that notes for these payments had been given at a prior time and accepted by the committee.

*Held,* that whether the committee had the right to accept such notes or not was a question with which the plaintiff had nothing to do and which need not be decided; that the fact that the committee might have failed in their duty in one instance, did not give the court power to compel them to violate their duty in another.

APPEAL by the plaintiff, Robert K. Dow, from a judgment of the Supreme Court dismissing the complaint upon the merits, entered in the office of the clerk of the city and county of New York on the 13th day of February, 1893, upon a decision of the court rendered after a trial at the New York Special Term.

*Leopold Wallach,* for the appellant.

*James Thomson,* for the respondents.

VAN BRUNT, P. J.:

This action was virtually an action for specific performance, although other relief was asked.

The facts in the case appear to be substantially as follows:

In 1887, the Central Iowa Railway Company had made default in payment of interest upon its mortgage bonds and upon its car trust certificates secured upon its rolling stock, and proceedings were commenced for the foreclosure of its mortgages. In these circumstances the bondholders and the holders of the car trust certificates of said company entered into an agreement, in writing, among themselves, under date the 12th of May, 1887, looking to the purchase of the railroad and properties of said company. By said agreement they appointed the individual defendants in this suit a committee to carry out the plan of reorganization therein provided for, who duly accepted. The agreement contemplated a purchase of the property and a reorganization of the same in the interest of the bondholders and holders of the car trust certificates, and of such of the stockholders, preferred and common, of the old company, as might go in and assent to the said agreement upon the terms therein stated. The various portions of the roads were afterwards sold under decrees of foreclosure entered in the Circuit Courts of the United States for the southern district of Iowa and the northern district of Illinois, and bought in for the said committee, who thereafter caused to be organized the defendant corporation, Iowa Central Railway Company, and conveyed the property so purchased by them to it. Among the provisions of the bondholders' agreement is the following : " The said committee are empowered to give to the holder of each share of common stock of the present company one share of common stock of the reorganized company, upon like payment by such holder to the committee of fifteen dollars upon each such share," to be used by the committee as provided in the third article of said agreement : that is to say, for payrolls and supply bills, secured claims, repairs and improvements upon the road and property, expenses of the committee, including counsel fees, and compensation to the members thereof and other disbursements needed to effectuate their trust. The surplus of the funds arising from assessments was to be paid over to the reorganized company.

It is further provided, " should any holder of  *  *  *  common stock decline or fail to pay the assessments  *  *  *  of fifteen dollars, the privilege of receiving such common stock of the reorganized

company upon making such payment shall be ratably distributed among the holders of debt certificates and of preferred and common stock who shall have paid their assessments, and in case they do not accept such privilege the same shall be allotted by the committee, in their discretion, to other persons who may be willing to accept the privilege and make the requisite payments. Holders of such * * * common stock whose address is lodged with the committee or noted upon the stock ledger of the company, shall be deemed to have declined to avail of the said privilege after twenty days' written or printed notice, mailed to such person at such address. * * * All persons making said payments * * * as shall be required by the committee, will be entitled to receive for the amount thereof certificates of indebtedness of the reorganized company, which certificates will bear no interest, and the time for payment of the principal shall be at the option of the company, but the principal thereof shall be convertible into preferred stock of the company."

Under the provisions of the agreement the committee fixed the installments in which the fifteen dollars per share on common stock should be paid at seven in number; six of two dollars each and the last of three dollars. At the date of this agreement John M. Rickins owned 1,000 shares of the common stock of the old company, represented by ten certificates, each certificate being for 100 shares. He paid the installment of two dollars per share and his certificates were thereupon indorsed as follows:

"Assent to agreement of May 12, 1887, with Edward H. Perkins, Russell Sage, Giles E. Taintor, Simon Borg, Edmund E. Chase, Charles C. Allen, James Thomson, Horace J. Morse, Committee. First instalment two dollars per share paid.

"For the Committee.

"(Signed)  MERCANTILE TRUST CO. OF NEW YORK.
                                  "By C. HUNTER, *Cashier.*"

Almost immediately afterwards Rickins died, and when the time fixed by the committee for the payment of the second installment of two dollars arrived, in January, 1888, the stock was held by the public administrator, Mr. Morrison, as administrator of Rickins' estate, and was so held by the public administrator until some time

in December, 1891. During the period that the stock was so held by the administrator, notice of the various installments called for by the committee were mailed to the public administrator and to one Mr. Owen Murphy at Toronto, who seemed to be looking after the interests of the next of kin of the decedent. Both Mr. Murphy and Mr. Arnold, the assistant of the public administrator, had interviews with Mr. Morse, the secretary of the committee, and were aware of the provisions of the bondholders' agreement and knew that assessments were due and unpaid, and also that the administrator had no funds with which to make payment. None of the assessments were paid by the administrator. The committee, about April 28, 1889, issued the following notice, which was mailed to the administrator:

## "FINAL NOTICE.

"Holders of coupon debt certificates 1st and 2nd preferred and common stock who have not paid full assessments on the same, must do so on or before Wednesday, May 29th, or forfeit all participation in the reorganization.

"This notice is peremptory and no further extension of time will be made."

The remaining installments, other than the first, which was paid by Rickins, were not paid by the administrator, and the stock was, "some time after April, 1890," purchased by the plaintiff and the certificates delivered to him, with the indorsements aforesaid thereon, for about $276.

In the latter part of December, 1891, the plaintiff tendered the amount which was due upon the various assessments upon the stock in question, which was declined upon the ground that the time had passed for the receiving of assessments.

Whereupon, this action was commenced to compel the delivery of the stock. Upon the trial the complaint was dismissed, and from the judgment thereupon entered this appeal is taken.

The learned counsel for the appellant, throughout the whole of his argument, seems to claim that it was necessary that some action should be taken upon the part of the bondholders' committee (because it is to be observed that the agreement for reorganization was a bondholders' agreement and a bondholders' agreement only)

to forfeit the rights which the owner of the stock whom he now represents had in that reorganization agreement.

But it seems to us that this is an entirely mistaken view to take of the relations of the parties. As already observed, the reorganization agreement was one of the bondholders only, and when the mortgages to secure these bonds had been foreclosed, and the property purchased by the reorganization committee, the holders of the stock had no interest in such property, having been cut off by the foreclosure proceedings.

This being the condition of affairs, under this reorganization agreement, the committee were empowered to give to the holders of stock in the prior organization certain privileges in the corporation to be formed under the reorganization scheme. These privileges were to be acquired by the payment of certain assessments, and might be withheld entirely by the bondholders' committee. By this agreement it was further provided that should any holder of stock decline or fail to pay his assessments, the privilege of receiving such stock in the reorganized company should be ratably distributed amongst the holders of debt certificates and of stock who should have paid their assessments, and in case such persons did not accept the privilege the same should be allotted by the committee in their discretion to other persons who might be willing to accept the privilege and make the required payments. And the agreement further provided that the holders of stock whose address was lodged with the committee or noted upon the stock ledger of the company should be deemed to have declined the offer of such privilege after twenty days' notice mailed to such persons at such address.

After the committee had called for these assessments upon the stock represented by the plaintiff, after the time had elapsed, and after the rights of other parties had intervened by reason of the terms of the agreement, the plaintiff seeks to compel the delivery of this stock. It seems to us there is no question but that the holders of debt certificates and of stock who had paid their assessments, became entitled as matter of right to claim this stock upon payment of the assessment, where the holder of the original stock had failed to do so pursuant to the terms of the reorganization agreement.

It required no proceedings upon the part of the reorganization

committee to terminate the rights of a defaulter under this agreement. The conditions of the agreement executed themselves. The moment the old stockholders made default, the rights of others intervened which they could enforce, and which the committee could not ignore.

But it is said that as late, and even after the plaintiff tendered the assessment upon the stock which he represented, the committee received payments from other persons. Upon an inspection of the record, it would appear that although the payments were actually received at that time notes had been given at a prior time and accepted by the committee for assessments which were not paid until about the time of the plaintiff's tender. Whether the committee had the right to accept these notes or not, is not a question which it is necessary for us to determine. That is a question between them and those whom they represent, with which the plaintiff has nothing to do. Because the committee may have failed in their duty in one instance, does not give the court power to compel them to violate their duty in another.

It has already been said that this action was for specific performance, and this designation of the action was made advisedly, because that seems to have been the actual scope of the action — to compel the committee to deliver this stock which had been agreed to be delivered upon the payment of the assessments under the agreement. Now, the one principle which underlies the enforcement of all contracts is that the plaintiff shall prove that he has performed all the conditions of the contract upon his part, and if he fails to do that he cannot maintain an action for specific performance. It is a familiar principle that a party seeking to enforce a contract must allege and prove that he has performed its conditions upon his part, unless the other contracting party, having the power so to do, has waived these conditions. It does not require any action upon the part of the other contracting party to preclude a recovery upon a contract, where the party seeking to recover is in default. The mere fact of the existence of the default precludes such recovery. The reorganization committee are not insisting upon a forfeiture. They are asking nothing. But the plaintiff seeks to be relieved from a default and to have the same rights as though he had performed his contract. We are not aware of any

branch of equity jurisprudence which authorizes the court to insist that one party shall perform the contract, and to relieve the other party from its obligations.

The opportunity to enter into this new organization, after foreclosure of the mortgages and the purchase of the property by the reorganization committee, was a privilege extended to the stockholders. As already intimated, their rights in the property which their stock was supposed to represent had been cut off by the foreclosure. They were entitled to nothing, and this option or privilege was offered to them, and they had a right to accept or reject it as they saw fit. The holders of the plaintiff's stock having accepted, but failed to comply with his contract of acceptance by making the payments which were conditions precedent to his right to receive the stock sought to be recovered in this action, it is difficult to see upon what basis the plaintiff could possibly succeed. All argument is a mere restatement of the proposition that a party seeking to enforce a contract must prove that he has complied with the conditions therein contained to be performed by him, and this the plaintiff certainly has not done.

We think, therefore, that the judgment should be affirmed, with costs.

FOLLETT and BARRETT, JJ., concurred.

Judgment affirmed, with costs.